1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWAIISU TRIBE OF TEJON and DAVID LAUGHING HORSE ROBINSON, Chairman, Kawaiisu Tribe of Tejon,<br><br>        Plaintiffs,<br><br>            v.<br><br>KEN SALAZAR, in his official capacity as Secretary of the United States Department of the Interior, et al.,<br><br>        Defendants. | 1:09-cv-01977 OWW SMS<br><br>ORDER RE DEFENDANTS' MOTIONS TO DISMISS (DOCS. 81, 83, 85, 100); AND PLAINTIFFS' REQUEST FOR LEAVE TO AMEND COMPLAINT (DOC. 100) AND FOR CERTIFICATION OF THE CEQA ADMINISTRATIVE RECORD (DOC. 105) |

I. <u>INTRODUCTION</u>

        Plaintiffs, the Kawaiisu Tribe of Tejon ("Kawaiisu"), a non-federally recognized Indian group, and David Laughing Horse Robinson ("Robinson"), who claims to be the Kawaiisu Chairman, (collectively, "Plaintiffs"), challenge Kern County's authorization of a large construction project ("Project") on private property by Tejon Mountain Village LLC ("Tejon").  First Amended Complaint ("FAC"), Doc. 71.  The FAC alleges that "the historical Tejon/Sebastian Indian Reservation" existed, at least at one time, on portions of the subject property.  FAC at ¶¶ 12-22, 65.  Plaintiffs allege that "[w]ithin the proposed project development area, there are over 50 pre-historic village sites,

1

numerous graves, and other sacred sites directly related to the Tribe."  FAC at ¶ 30.  The FAC also alleges that the Department of the Interior ("DOI" or "Federal Defendant") has failed to "engage the Tribe and protect its interests pursuant to treaties, Executive Orders, and other Acts of Congress."  FAC at ¶ 1.

The first claim for relief in the FAC alleges that DOI violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, *et seq.*, by unreasonably delaying action on the Kawaiisu's federal recognition petition before the Bureau of Indian Affairs ("BIA"), a branch of DOI.  FAC at ¶¶ 23-27, 42-48.

The second claim alleges that DOI has violated both the APA and the Equal Protection Clause of the Fourteenth Amendment[1] to the United States Constitution because "every other tribal signatory" to an 1849 Treaty with Utah "has received some sort of recognition," with the exception of the Kawaiisu.  This is alleged to be "arbitrary, capricious, and otherwise contrary to law," in violation of the APA.

The third claim for relief names only Kern County, and alleges that approval of the Project violates the California Environmental Quality Act ("CEQA"), as well as the federal Native

---

[1] The Fourteenth Amendment is, on its face, inapplicable to the federal government.  However, "the Fifth Amendment's Due Process Clause, subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment."  *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1429 n.18 (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)).  It is appropriate to read Plaintiffs' Fourteenth Amendment claim as one arising under the Fifth Amendment.  *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171 n.4 (9th Cir. 2007).

American Graves Protection and Repatriation Act ("NAGPRA"), the National Historic Preservation Act ("NHPA"), and the Archaeological Resource Protection Act ("ARPA").  FAC at ¶¶ 53-60.  Tejon, the developer of the Project, is named as the real party in interest.

The fourth claim, brought under 42 U.S.C. § 1983 against only the California Native American Heritage Commission ("NAHC"), which allegedly plays a role in listing individuals as "Most Likely Descendants" of California Native American Tribes, alleges that NAHC violated Plaintiff Robinson's civil rights by not including him on the list of Native American Contacts for Kern County, despite being "almost identically situated to the other 11 groups listed."  *See* FAC at ¶ 61-63.  NAHC allegedly had neither Plaintiff on its list of Native American Contacts.  As a result, the FAC alleges that neither was contacted by Kern County for consultation on the Project's potential impacts to sacred, archeological, and historical sites.  FAC at ¶ 32.

## II. STANDARDS OF DECISION

A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. Pro. 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of jurisdiction over the subject matter."  Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.

1996).   A federal court is presumed to lack jurisdiction in a

particular case unless the contrary affirmatively appears.   *Gen.*

*Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-969 (9th

Cir. 1981).

     A challenge to subject matter jurisdiction may be facial or

factual.   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A s

explained in Safe Air for *Everyone v. Meyer*, 373 F.3d 1035, 1038

(9th Cir. 2004):

> In a facial attack, the challenger asserts that the
> allegations contained in a complaint are insufficient
> on their face to invoke federal jurisdiction. By
> contrast, in a factual attack, the challenger disputes
> the truth of the allegations that, by themselves, would
> otherwise invoke federal jurisdiction.

In resolving a factual attack on jurisdiction, the district court

may review evidence beyond the complaint without converting the

motion to dismiss into a motion for summary judgment.   *Savage v.*

*Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir.

2003); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.

1988).   "If the challenge to jurisdiction is a facial attack,

i.e., the defendant contends that the allegations of jurisdiction

contained in the complaint are insufficient on their face to

demonstrate the existence of jurisdiction, the plaintiff is

entitled to safeguards similar to those applicable when a Rule

12(b)(6) motion is made."   *Cervantez v. Sullivan*, 719 F. Supp.

899, 903 (E.D. Cal. 1989), rev'd on other grounds, 963 F.2d 229

(9th Cir. 1992).   "The factual allegations of the complaint are

presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction."  *Id*.

The standards used to resolve motions to dismiss under Rule 12(b)(6) are relevant to disposition of a facial attack under 12(b)(1).  *See Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n.2 (9th Cir. 2009), rev'd on other grounds en banc, 616 F.3d 1019 (9th Cir. 2010) (applying *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) to a motion to dismiss for lack of subject matter jurisdiction).

B.    Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not need detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss, the court should assume the veracity of "well-pleaded factual allegations," but is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 127 S. Ct. at 1950.  "Labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.  "'Naked assertion [s]' devoid of 'further factual enhancement'" are also insufficient. *Iqbal*, 127 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Instead, the complaint must contain enough facts to state a claim to relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A claim has facial plausibility when the complaint's factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Iqbal*, 127 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Ninth Circuit summarizes the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

If a district court considers evidence outside the

pleadings, a Rule 12(b)(6) motion to dismiss must be converted to a Rule 56 motion for summary judgment, and the nonmoving party must be given an opportunity to respond.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  *Id*. at 908.

### III. DISCUSSION

**A.   Claims Against Federal Defendant.**

> **1.   Federal Defendant's Motion to Dismiss.**

On September 3, 2010, Federal Defendant moved to dismiss both of the claims against DOI.  As to the first claim alleging DOI's handling of Plaintiffs' recognition petition violated the APA, DOI argues that in 2006, the then-Chairman of the Kern Valley Indian Community, the name under which Plaintiffs allege they filed their initial recognition petition in 1979, wrote DOI requesting that the group's petition for recognition be withdrawn.  DOI argues Plaintiffs' abandonment of the administrative process amounts to a failure to exhaust.  In addition, DOI argues that the six-year statute of limitations applicable to civil actions against the United States, 28 U.S.C. § 2401(a), bars both Plaintiffs' APA and Equal Protection Claim.  Doc. 81-1.

2.  <u>Plaintiffs' Request for Leave to Voluntarily Dismiss Claims Against Federal Defendant Without Prejudice.</u>

On December 2, 2010, Plaintiffs filed a request for leave to voluntarily dismiss without prejudice their "two stated claims for relief" against DOI.  As a threshold matter, while Plaintiff's request seeks dismissal of both claims against DOI, the final paragraph of their request specifies that they seek dismissal of only paragraphs 43-46; 50-52; and 69-70.  This inexplicably fails to reference the final two paragraphs (47 and 48) of the first claim or four paragraphs of the prayer for relief against DOI (paragraphs 71 - 74):

> 47.  Most recently, these injuries have manifested themselves from Interior's failure to step in and protect one of their most vital resources: the sacred places and burial grounds of their ancestors. Despite all parties clearly being within the zones of interest that NAGPRA, NHPA, and ARPA were designed to regulate and protect, Interior's insouiance has created a scenario where Kern County and TMV can deny accountability with no explanation needed other than to remind the Tribe that their name doesn't appear on the list.

> 48.  Interior's lack of engagement with the Tribe has been arbitrary, capricious, and otherwise contrary to the law. 5 U.S.C. §706(2)(a). Without immediate action, there will certainly be irreparable injury to the Tribe in a manner that no monetary award could later compensate. For these reasons, the Tribe is entitled to relief prayed for below.

> ***

> 71.  Order Interior to remove jurisdiction from the Native American Heritage Commission to determine California Most Likely Descendants and return that jurisdiction to the National Park Service. Require that Interior work with the National Park Service to establish and incorporate a policy requiring all California Native American Consultants, Monitors and Most Likely Descendants working on California projects to present a California Certified Degree of Indian

8

Blood (CDIB) certificate from Interior.

72.  Order Interior to restore the Tejon/Sebastian Indian Reservation School Building and land as Trust property of the Kawaiisu Tribe of Tejon pursuant to Public Law 85-31, May 16, 1957, S.998, 71 Stat 29.

73.  Order Interior to restore to Trust status the Kawaiisu allotments that were sold without approval.

74.  Order Interior to provide an accounting of accrued revenues from resources extracted from the Tejon/Sebastian Indian Reservation (oil, minerals, water, agricultural, leases).

Plaintiffs wish to dismiss the substantive claims against DOI, while retaining the right to obtain relief against Federal Defendant.  Plaintiffs cannot have it both ways.  Without a viable claim premised on a waiver of sovereign immunity, a court cannot enter judgment against an agency of the United States.

Plaintiffs' request for dismissal of the claims against Federal Defendant is governed by Federal Rule of Civil Procedure 41.[2]  The parties engage in a lengthy debate over whether dismissal should be with or without prejudice, without referring to the relevant language of Rule 41(a), which provides:

(a) Voluntary Dismissal.

(1) By the Plaintiff.

(A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

---

[2] Plaintiffs incorrectly suggest that Rule 15 governs here.  While Rule 15 controls amendment and circumstances when a party seeks to dismiss some, but not all, claims against an individual defendant, Rule 41 applies where a party seeks to dismiss one or all of the defendants from an action.  *See Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988) noting that Rule 41 applies to complete dismissal as to all defendants, or partial dismissal of all claims against one codefendant).

                              (i) a notice of dismissal before the opposing
                              party serves either an answer or a motion for
                              summary judgment; or

                              (ii) a stipulation of dismissal signed by all
                              parties who have appeared.

                     (B) Effect. Unless the notice or stipulation
                     states otherwise, the dismissal is without
                     prejudice. But if the plaintiff previously
                     dismissed any federal-or state-court action based
                     on or including the same claim, a notice of
                     dismissal operates as an adjudication on the
                     merits.

No answer or motion for summary judgment has been filed.

Plaintiffs may voluntarily dismiss the action against Federal

Defendants <u>without leave of court</u>.  Such dismissal is

<u>automatically without prejudice</u> unless the plaintiff has

previously dismissed any federal or state court action based on

or including the same claim.  No such previous dismissal has

taken place here.  (The original complaint was amended after

counsel was retained, but this does not operate as a dismissal.)

Plaintiffs may voluntarily dismiss the claims against Federal

Defendants without prejudice without leave of court.  Their

request to do so is GRANTED.


     3.    <u>Plaintiffs' Opposition to Federal Defendants' Motion to
           Dismiss.</u>

     Adding to the procedural confusion in this case, on December

17, 2010, just seven days after seeking leave to voluntarily

dismiss their claims against Federal Defendant, Plaintiffs filed

an opposition to DOI's motion to dismiss.  Plaintiffs do not

address the arguments raised by Federal Defendant in its motion

                              10

to dismiss; rather, Plaintiffs assert entirely new bases for federal jurisdiction.  Plaintiffs now argue that their claims in the FAC are "land based claimed" seeking "to enforce their aboriginal land rights."  Doc. 103 at 7.

Specifically, Plaintiffs claim the Court has federal question jurisdiction to adjudicate these land-based claims because "Tribes have a federal common law right to sue to enforce their aboriginal land rights," citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 235 (1985) (*Oneida II*), which permits Indian tribes to maintain actions for violation of "possessory rights" to aboriginal lands based on federal common law.  Plaintiffs are correct that *Oneida II* held "there is no federal statute of limitations governing federal common law actions by Indians to enforce property rights."  470 U.S. at 240. However, there are several fundamental problems with Plaintiffs' reliance on *Onieda II*.  First, Plaintiffs do not allege a current possessory interest in the lands in question.  Second, although the FAC arguably contains "land-based" claims against the other Defendants, no such claims are asserted against DOI.  Finally, at least one court has held that a federal common law action for enforcement of aboriginal land rights cannot be maintained by an unrecognized Indian tribe.  *See United States v. 43.47 Acres of Land*, 855 F. Supp. 549, 551 (D. Conn. 1994) (absent certification as a Tribe by the BIA, no action to protect tribal lands may be

11

1

maintained).

2

    Alternatively, Plaintiffs argue that jurisdiction arises

3

under 25 U.S.C. § 345 or 28 U.S.C. § 1353.  Neither statute could

4

possibly apply here.  Title 25 U.S.C. § 345 provides a cause of

5

action for persons "of Indian blood or decent" who claim to be

6

"entitled to land under any [federal] allotment Act or under any

7

grant made by Congress, or who claim to have been unlawfully

8

denied or excluded from any allotment or any parcel of land to

9

which they claim to be lawfully entitled by virtue of any Act of

10

Congress...."  Title 28, United States Code, section 1353

11

provides that district courts shall have original jurisdiction

12

over "any civil action involving the right of any person, in

13

whole or in part of Indian blood or descent, to any allotment of

14

land under any Act of Congress or treaty."  The waiver of

15

sovereign immunity contained in section 345 is limited to Indians

16

seeking to obtain an original allotment.  *United States v.*

17

*Mottaz*, 476 U.S. 834, 844-45 (1986).  Likewise, 28 U.S.C. § 1385

18

was "enacted for the narrow purpose of giving district courts

19

jurisdiction over claims of right of original allotments or

20

allotments in the first instance."  *Dry Creek Lodge v. United*

21

*States*, 515 F.2d 926, 935 n.11 (10th Cir. 1975).  Nowhere in the

22

FAC do Plaintiffs claim a right to an original allotment.

23

Rather, Plaintiffs request that allotments already issued to its

24

members be declared Indian Country and "tribal Land."

25

26

27

28

In sum, Plaintiffs have voluntarily dismissed the first and second causes of action against the United States.  Their argument that the Court can otherwise exercise jurisdiction over Federal Defendant is meritless.  They have not asserted claims against Federal Defendant under federal common law, 25 U.S.C. § 345, or 28 U.S.C. § 1353, and have not shown any basis on which they can do so.

B.    Remaining Claims Against Kern County and Tejon.

The single claim against Kern County (and Tejon as real party in interest), set forth in paragraphs 54 through 60 of the FAC, cites numerous statutory provisions, including the California Environmental Quality Act ("CEQA"), Cal. Pub. Res. Code § 21000, *et seq.*, and the federal National Historic Preservation Act ("NHPA"), Archaeological Resources Protection Act ("ARPA"), 16 U.S.C. § 470aa, *et seq.*, Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001, *et seq.*, and National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq*.

1.    Federal Claims against Kern County and Tejon.

Plaintiffs' NEPA and NAGPRA claims are set forth in paragraphs 57 and 58:

> 57.  Despite the land in question being an Indian reservation with no record of termination, federal statutory guidelines were not followed with respect to NEPA 42 U.S.C § 4321 et. seq., or as required when Indian remains are found on federal land.  25 U.S.C. § 3001, et. seq.

58.   Federal law mandates that when any Native American cultural items (human remains/funerary objects) are excavated on federal or tribal lands, priority for their ownership shall be given to the Indian tribe that has the closest cultural affiliation with those objects and upon being given notice, states a claim for such objects. 25 U.S.C. § 3002(2)(b).

NEPA applies only to "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(C).  There is no suggestion that any "major Federal action" has taken place in this case.

Likewise, NAGPRA is only applicable when Native American cultural items are discovered or excavated on "Federal or tribal lands."  25 U.S.C. §§ 3001-3004.  For the purposes of NAGPRA, "tribal land" means:

(A) all lands within the exterior boundaries of any Indian reservation;

(B) all dependent Indian communities;

(C) any lands administered for the benefit of Native Hawaiians pursuant to the Hawaiian Homes Commission Act, 1920, and section 4 of Public Law 86-3.

25 U.S.C. § 3001(15).  NAGPRA's implementing regulations define "tribal lands" to mean "all lands which":

(i) Are within the exterior boundaries of any Indian reservation including, but not limited to, allotments held in trust or subject to a restriction on alienation by the United States; or

(ii) Comprise dependent Indian communities as recognized pursuant to 18 U.S.C. 1151; or

(iii) Are administered for the benefit of Native Hawaiians pursuant to the Hawaiian Homes Commission Act of 1920 and section 4 of the Hawaiian Statehood Admission Act (Pub. L. 86-3; 73 Stat. 6).

14

> (iv) Actions authorized or required under these
> regulations will not apply to tribal lands to the
> extent that any action would result in a taking of
> property without compensation within the meaning of the
> Fifth Amendment of the United States Constitution.

43 C.F.R. § 10.2(f)(2).  There is no suggestion that the lands in

question, which are currently private property, qualify for

coverage under any of these provisions.[3]

Plaintiffs also mention two additional federal statutes in

Paragraph 56, NHPA and ARPA:

> 56. The Tribe's long recognized presence in the area
> along with the centrality of maintaining the integrity
> of sacred sites to their socio-cultural existence
> clearly bring them within the zone of interests
> contemplated under CEQA, NHPA, ARPA, and NAGPRA.
> Likewise, both TMV and the County are clearly within
> the zones of interest to be regulated under these
> statutes.

This allegation lacks any specific basis for a NHPA and/or ARPA

claim in violation of *Iqbal* and *Twombly's* requirement that "a

complaint must contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face."

*Iqbal*, 129 S. Ct. 1949 (quoting *Twombly*, 550 U.S. at 570).

Like NEPA, the NHPA applies only where there is a "federal

or federally assisted undertaking."  16 U.S.C. § 470f.

Plaintiffs have alleged no such federal undertaking.

---

[3] Defendants question whether an individual who is not a member of a
recognized Indian tribe has standing to bring suit under NAGPRA.  25 U.S.C. §
3013 provides district courts with jurisdiction over "any action brought by
any person alleging a violation of this chapter...."  The Ninth Circuit has
held that the "any person" language in § 3013 "may not be interpreted
restrictively to mean only 'any American Indian person' or 'any Indian
Tribe.'"  *Bonnichsen v. United States*, 367 F.3d 864, 874 (9th Cir. 2004).
Nevertheless, Plaintiffs' NAGPRA claims fail on multiple alternative grounds.

ARPA applies only to "public lands or Indian lands."  *See* 16 U.S.C. § 470cc(a)-(c) and 470ee(a).  ARPA's regulations define these terms:

> (d) "Public lands" means:
>
> > (1) Lands which are owned and administered by the United States as part of the national park system, the national wildlife refuge system, or the national forest system; and
> >
> > (2) All other lands the fee title to which is held by the United States, except lands on the Outer Continental Shelf, lands under the jurisdiction of the Smithsonian Institution, and Indian lands.
>
> (e) "Indian lands" means lands of Indian tribes, or Indian individuals, which are either held in trust by the United States or subject to a restriction against alienation imposed by the United States, except for subsurface interests not owned or controlled by an Indian tribe or Indian individual.
>
> (f) "Indian tribe" as defined in the Act means any Indian tribe, band, nation, or other organized group or community, including any Alaska village or regional or village corporation as defined in, or established pursuant to, the Alaska Native Claims Settlement Act (85 Stat. 688). In order to clarify this statutory definition for purposes of this part, "Indian tribe" means:
>
> > (1) Any tribal entity which is included in the annual list of recognized tribes published in the Federal Register by the Secretary of the Interior pursuant to 25 CFR Part 54;
> >
> > (2) Any other tribal entity acknowledged by the Secretary of the Interior pursuant to 25 CFR Part 54 since the most recent publication of the annual list; and
> >
> > (3) Any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688), and any Alaska Native village

16

> or tribe which is recognized by the Secretary of the Interior as eligible for services provided by the Bureau of Indian Affairs.

43 C.F.R. § 7.3.  There is no assertion that the lands in question here <u>currently</u> qualify under either of these definitions.

Plaintiffs allege that the land in question is actually "tribal land" to which the Kawaiisu hold "aboriginal title." Accordingly, Plaintiffs ask for a declaration that the Kawaiisu are a "tribe" and the historical Tejon/Sebastian Reservation is "tribal land" for purposes of NAGPRA, ARPA, and NHPA.  It is undisputed that the land <u>is currently private property</u>.  There is no mechanism under NAGPRA, ARPA, or NHPA to re-classify tribal groups or parcels of land.

Only the BIA can declare the Kawaiisu to be a federally-recognized Tribe (and therefore able to possess "Indian Land" under ARPA).  *See Western Shoshone Business Council for and on behalf of Western Shoshone Tribe of the Duck Valley Reservation*, 1 F.3d 1052, 1056-58 (10th Cir. 1993).[4]  Plaintiffs have voluntarily dismissed their claim against the BIA.  Nor do Plaintiffs' allegations that the lands in question <u>may have at</u>

---

[4] *Western Shoshone* rejected the underpinnings of the line of cases cited by plaintiffs, *e.g. Masshpee Tribe v. New Seabury Corp.*, 427 F. Supp. 899 (D.C. Mass. 1977); *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 388 F. Supp. 649, 655-56 (D.C. Me. 1975); *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F. Supp. 798 (D.C.R.I. 1976), in which courts did not defer to the BIA's acknowledgment procedures, reasoning that those cases predated or closely followed the passage of the acknowledgment regulations.  *See Western Shoshone*, 1 F.3d at 1057.

<u>one time been an Indian Reservation</u> establish that the lands are

today within the boundaries of Indian Reservation for the

purposes of NAGPRA or otherwise.  Before Plaintiffs can assert a

claim under NAGPRA based on aboriginal title arising out of the

historic Tejon Reservation, the current status of that alleged

Reservation must be clarified.  Plaintiffs have not alleged any

claim to quiet title to or otherwise assert possession over the

lands in question (currently in private hands).

Kern County and Tejon's motions to dismiss the NEPA and ARPA

claims are GRANTED WITHOUT LEAVE TO AMEND AND WITH PREJUDICE,

because these claims turn on the presence of a federal

undertaking, which cannot plausibly be alleged.

Kern County and Tejon's motion to dismiss the ARPA claim is

likewise GRANTED WITHOUT LEAVE TO AMEND BUT WITHOUT PREJUDICE,

because that claim turns on federal recognition by the BIA, which

Plaintiffs are pursuing in the administrative arena.

Finally, Kern County and Tejon's motion to dismiss the

NAGPRA claim is GRANTED WITH LEAVE TO AMEND.  Plaintiffs have

requested leave to amend the complaint to assert a claim based

upon aboriginal title.  Plaintiffs shall be afforded the

opportunity to assert such a claim directly, not under NAGPRA.

However, if Plaintiffs can allege a claim based on aboriginal

title through some other mechanism and are ultimately successful,

the result of such a claim may be the recognition of an Indian

18

Reservation, which would trigger the operation of NAGPRA.[5]

Therefore, the NAGPRA claim is DISMISSED WITH LEAVE TO AMEND.

    2.   <u>Remaining State Law Claims against Kern County and Tejon.</u>

Plaintiffs' claims against Federal Defendant have been voluntarily dismissed, and the remaining federal claims against Kern County and Tejon have been dismissed for failure to state a claim under any of the relied-upon statutes.  One federal claim remains: the section 1983/equal protection claim against NAHC. The propriety of exercising supplemental jurisdiction over the remaining state law claim depends on their relationship to any extant federal claim.

C.   <u>Claims Against NAHC and Defendant Meyers.</u>

The FAC's fourth claim, brought under 42 U.S.C. § 1983 against NAHC and its director Larry Meyers, alleges that NAHC's failure to include Plaintiff Robinson in its Native American contact list violated the equal protection clause of the Fourteenth Amendment.  The substantive portion of this claim alleges:

> 62.  NAHC violated Plaintiff Robinson's civil rights by not including him on the list of Native American Contacts for the Kern County despite being almost identically situated to the other 11 groups listed.

> 63.  The 'input' from these other listed consultants has resulted in the potential destruction of numerous

---

[5] No opinion is expressed as to the viability of any claim to aboriginal title in the Tejon Reservation or any other related parcel of land.  The parties have not briefed whether jurisdiction even exists to entertain such a claim.

1

2

3

> graves and other sacred sites that are of incalculable value both to Plaintiff Robinson and the Tribe. For these reasons, the Plaintiff Robinson is entitled to the relief prayed for below.

4

5

6

7

NAHC moved to dismiss this claim on December 17, 2010, Doc. 100-1, but, in lieu of filing an opposition, Plaintiffs requested leave to amend as to that claim only.  Doc. 110.  NAHC does not object.  Doc. 118.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The viability of any amended 1983 claim remains to be determined.  Assuming the claim against NAHC is not expanded to include additional conduct, the exercise of supplemental jurisdiction over the remaining state law claims is unjustified. A district court may decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction.").  "When federal claims are dismissed before trial ... pendant state claims also should be dismissed."  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

27

28

Even assuming Plaintiffs could allege a viable 1983 claim

against NAHC, 28 U.S.C. 1367(a) only permits a district court to exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  This requires that "[t]he state federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Id*.  Here, Plaintiffs' CEQA claim does not substantially overlap with the 1983/equal protection claim against NAHC.

The CEQA claim is set forth in Paragraphs 54-55:

> 54.   The California Environmental Quality Act requires that any project that causes a substantial adverse change in the significance of a historical or archeological resource is a 'significant effect' requiring the preparation of an EIR. [Cal.] Code Reg. § 15064.5(b)(c)(f). In the EIR, the lead agency is required to asses whether the project will have an adverse impact on these resources within the area of potential effect and, if so, to mitigate that effect. §15382. Lead agencies should consider avoidance when significant cultural resources could be affected by a project. §§ 15064.5, 15370. In the event of an accidental discovery of any human remains, construction or excavation must stopped until the county coroner or medical examiner can determine whether the remains are those of Native Americans. Health and Safety Code §7050.5, Pub. Res. Code §5097.98, CEQA §15064.5(d).

55.  The factors considered and procedures used in completing the EIR were deficient under CEQA for, but not limited to, the following reasons:

A.  Failure to adequately analyze the impacts of the Project on cultural resources and failure to adequately analyze the mitigation measures that would substantially lessen the Project's significant irreversible environmental impacts;

B.  Omission of proper notice to, adequate consultation with, and establishing Most Likely Descendant status with the Tribe and the Tribe's Chair, David Laughing Horse Robinson;

C.  Native American Monitors and Most Likely Descendants on this project were not properly documented California Native Americans;

D.  Inadequacy of disclosure and lack of transparency on the part of the County and EIR tribal consultants.

FAC at ¶¶ 54-55.

The only issue raised by the 1983 claim is whether NAHC violated the equal protection clause of the Fourteenth Amendment by failing to include Plaintiff Robinson in its contact list for Kern County.  There is essentially no evidentiary or legal overlap between this claim and the CEQA claim.  They do not derive from the same common nucleus of operative fact.[6]

Therefore, even if the fourth cause of action remains in this

_____

[6] This case is distinguishable from *Communities for a Better Environment v. Cenco Refining Company*, 180 F. Supp. 2d 1062 (C.D. Cal. 2001), cited by Plaintiffs.  In that case, the federal claim, a Clean Air Act ("CAA") challenge to the issuance of an emissions permit to a refinery, was deemed sufficiently intertwined with an allegation that defendant violated CEQA by failing to properly acknowledge potential CAA violations.  Likewise, *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 2009 U.S. Dist. Lexis 65753 at *5-6 (E.D. Cal. Jul. 30, 2009), also cited by Plaintiffs, involved a NEPA challenge to a project.  The district court exercised supplemental jurisdiction over a CEQA claim that involved approval of the same project using the same EA/EIR document.  Here, in contrast, the CEQA claim does not substantially overlap with the equal protection claim.

case, there is no basis for exercising supplemental jurisdiction

over the CEQA claim.

The third claim for relief against Kern County arguably

contains one additional state law claim:

> 59. By not consulting with the Tribe and cataloging
> their sacred places within Kern County, the County in
> conjunction with the Native American Heritage
> Commission have violated [Cal. Pub. Res. Code] section
> 5097.94 (a) and SB 18.

This alleges a failure to catalog sacred places under state law.

This is totally unrelated to any alleged failure by NAHC to

include Plaintiff Robinson it its contact list. The state law

claim does not arise out of the same common nucleus of operative

fact as the section 1983 claim.

There is no basis for exercising supplemental jurisdiction

over the state law CEQA, California Public Resources Code section

5097.94, or SB 18 claims.


D.    Request for Submission of Duplicate CEQA Administrative
      Record.

Plaintiffs have requested that Kern County provide a

certified copy of the CEQA administrative record. To support

this request, Plaintiffs cite CEQA, which requires the public

agency to prepare and certify an administrative record whenever a

request for one is served upon that agency. Cal. Pub. Res. Code

§ 21167.6. Plaintiffs also maintain that the CEQA administrative

record will "provide Plaintiffs with facts necessary to pursue

claims in Federal Court" in connection with NAGPRA, ARPA and

NHPA.  Plaintiffs appear to suggest that the administrative record should be produced as some form of discovery.  This request is meritless for several reasons.

First, as discussed above, there is no basis upon which to exercise supplemental jurisdiction over Plaintiffs' CEQA claim. CEQA's requirement for production of an administrative record has no application in this case.

Second, Plaintiffs' NAGPRA, ARPA, and NHPA claims fail as a matter of law.  No amount of additional discovery can overcome the admitted fact that the Project is not a federal undertaking, nor that the Project is not taking place on lands currently considered "public," "Indian," or "federal."  Plaintiffs may have recourse in a federal common law action to enforce their alleged aboriginal land rights, but no such claim has been alleged.

Plaintiffs have presented no basis upon which this Court could order Kern County to certify and serve a copy of its CEQA administrative record on the Court or Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above:

      (1) Plaintiffs' request to voluntarily dismiss its claims against Federal Defendants is GRANTED;

      (2) Kern County and Tejon's motions to dismiss:

            (a) the NEPA and ARPA claims are GRANTED WITHOUT LEAVE TO AMEND AND WITH PREJUDICE;

(b) the ARPA claim is likewise GRANTED WITHOUT LEAVE TO AMEND BUT WITHOUT PREJUDICE;

(c) the NAGPRA claim is GRANTED WITH LEAVE TO AMEND;

(3) Plaintiffs' unopposed request for leave to amend its section 1983/equal protection claim against NAHC is GRANTED and NAHC's motion to dismiss is DENIED AS MOOT;

(4) There is no basis for the exercise of supplemental jurisdiction over Plaintiffs' CEQA, California Public Resources Code section 5097.94, and SB 18 claims. Accordingly, the County and Tejon's motions to dismiss these claims are GRANTED WITH LEAVE TO AMEND;

(5) Plaintiffs' request that the Court order the County to produce a CEQA administrative record is DENIED;

(6) Plaintiffs shall be afforded the opportunity to assert a land-based claim for enforcement of aboriginal title in any amended complaint;

(7) Plaintiffs shall have 15 days to file an amended complaint.

Defendants shall file a form of order consistent with this memorandum decision within 5 days of electronic service.


SO ORDERED
Dated:  February 4, 2011

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge

25